UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-21340-CIV-SEITZ/SIMONTON

ROBERT ZYGARLOWSKI,

    Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.
_____/

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant, ROYAL CARIBBEAN CRUISES, LTD., by and through undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully moves the Court for entry of Summary Judgment in its favor and against Plaintiff, ROBERT ZYGARLOWSKI, on grounds that there exist no genuine issues of material fact in dispute, and defendant is entitled to judgment in its favor as a matter of law.

### I. INTRODUCTION

On April 16, 2010, Plaintiff was a passenger aboard Defendant's cruise ship *Monarch of the Seas*. Plaintiff alleges that he fell while descending a carpeted wheelchair access ramp located at a doorway threshold near the restrooms on the starboard side of the main pool area on Deck 11. Plaintiff claims he sustained injuries to his right shoulder as a result of the fall. Defendant's investigation has revealed that this is the first incident of its kind involving the wheelchair access ramp and that Defendant was not on notice of any dangerous or risk-creating condition related to Plaintiff's claimed incident.

A prerequisite to the imposition of liability on a cruise ship operator is that the cruise ship

operator had actual or constructive notice of a dangerous or risk-creating condition. Importantly, it is a passenger plaintiff's burden to prove that the cruise ship operator was on actual or constructive notice of a dangerous or risk-creating condition before liability may attach. Even drawing every permissible possible factual inference in favor of Plaintiff, the supporting evidence filed herewith demonstrates Plaintiff cannot meet his burden of proving that Defendant was on notice, either actual or constructive, of any dangerous condition involving the wheelchair access ramp on the exterior/aft side of the sliding glass door threshold leading from the starboard side restrooms to the outdoor pool area on Deck 11 aboard the *Monarch of the Seas*. Absent such evidence demonstrating notice, Defendant cannot be held liable for Plaintiff's incident as a matter of law.

## II.  UNDISPUTED MATERIAL FACTS

1.  On April 16, 2010, Plaintiff was a passenger aboard the *Monarch of the Seas*. (D.E. 1, ¶ 6).

2.  On April 16, 2010, Defendant was the owner/operator of the *Monarch of the Seas*. (D.E. 1, ¶ 2).

3.  Plaintiff claims to have sustained injuries when he fell aboard Defendant's cruise ship on April 16, 2010. (D.E. 1. ¶ 8(a)-(b)).

4.  The condition at issue is an outdoor-carpeted wheelchair access ramp on Deck 11 of the *Monarch of the Seas*. The ramp is at the aft/exterior of a sliding glass doorway threshold located along a walkway leading from the ship's Windjammer Café and starboard side restrooms to the outdoor pool area. (Affidavit of David Banciella, ¶ 8, attached hereto as Exhibit "1")

5.  Plaintiff does not identify any defective or risk creating condition within his Answers to Interrogatories and/or deposition testimony of which Defendant had actual or

constructive notice of prior to his fall on April 16, 2010. Plaintiff identifies no eyewitnesses. In his Complaint and Answers to Interrogatories, Plaintiff states an "uneven floor surface" caused him to fall. (D.E. 1, ¶ 8(a); Plaintiff's Answers to Interrogatories, No. 8, attached hereto as Exhibit "2"). At best, Plaintiff's allegations identify that he stumbled forward and fell after taking one step on the wheelchair access ramp decline.

6. Within his Answers to Interrogatories Plaintiff responded to the following interrogatory:

> 8. Describe in precise detail the location of and how the incident alleged in the complaint occurred, including all actions taken by you to prevent said incident.
>
> A: The incident occurred outside of the bathroom on my way to the main pool deck. *After walking through the sliding doors, I stumbled because of an uneven floor surface* into a steel cart. I hit the corner of the steel cart with my right shoulder and right arm. I may have also hit my head on the steel cart. There was nothing I could have done to prevent the incident. (emphasis added) (served October 11, 2011).

7. Plaintiff then testified during his deposition on December 15, 2011 that he tripped after taking his first step while descending the carpeted wheelchair access ramp on the exterior/aft side of the sliding glass door leading from the restroom entrances to the outdoor pool area. (Dep. of Plaintiff at p. 56-60, cited pages attached hereto as Exhibit "3")[1]. The pertinent exchanges are contained on pages 57-59 of the transcript:

> Q: Okay. So after you went to the bathroom, you came out of the bathroom, and the glass doors opened?
> A: Uh-huh.
>
> Q: And can you describe for me again. How many steps did you take out of the doors before you started to fall?

---

[1] For purposes of this motion Defendant attaches only pages 56 through 60 of the deposition transcript.

A:    Well, I just stepped over the threshold.

Q:    Okay.
A:    And the floor was, like, uneven. And I sort of, like, stumbled forward, trying to catch my balance; I just went forward faster and faster. And I was going down to the ground. And that's all I remember.

Q:    Now when you say the floor was uneven, what do you mean by that?
A:    It wasn't level when I came out the door.

Q:    When you come out of the glass doors?
A:    Yes.

(Plf. Depo. at. p.57, l. 11–p. 58, l. 2) (Ex. 3).
\* \* \* \* \*

Q:    Okay. So the floor was uneven immediately upon walking through the threshold?
A:    When I put my foot down.

Q:    Which foot did you put down first?
A:    My left one.

(Plf. Depo. at p. 58, ll. 13-17) (Ex. 3).
\* \* \* \* \*

Q:    Okay. So with the first step you took out, which was your left foot, at that point did you have balance?
A:    No.

Q:    So the first step you took you had no balance?
A:    (Indicating.)

Q:    Okay.
A:    No balance.

(Plf. Depo. at p. 59, ll. 3-10) (Ex. 3).
\* \* \* \* \*

Q:    Now, when you walked from the pool to the bathroom, and through those glass doors, did you have any problem with your balance on the way in?
A:    Don't believe so.

> Q: Now when you stepped out with your left foot, what was the surface that you were stepping onto?
> A: Carpeting.

(Plf. Depo. at p. 59, ll. 17-23) (Ex. 3).

8. Plaintiff's incident is the first of its kind concerning the wheelchair access ramp near the Deck 11 starboard side restrooms aboard the *Monarch of the Seas*. Prior to Plaintiff's incident, no similar incident involving a passenger falling while traversing the carpeted wheelchair access ramp on the aft/exterior side of the sliding glass doors was reported or otherwise brought to Defendant's attention for the three year period preceding Plaintiff's fall. (Ex. 1, ¶¶ 8-12).

9. Following the hearing before the Court on May 17, 2012, Defendant performed a search of its database system for other incidents occurring in the subject area aboard the *Monarch of the Seas* for the three year period prior to Plaintiff's claimed incident of April 16, 2010. (Ex. 1, ¶ 5).

10. Defendant's search identified three prior incidents in the vicinity of the sliding glass door and ramp structure. However, none involved the aft/exterior wheelchair access ramp. (Ex. 1, ¶¶ 8-12).

11. The first incident took place on June 7, 2007 and the recorded description of the location reads:

> "My wife…was going from the Windjammer Deck 11 Café to the poolside on the starboard side. *As she approached the second door to the pool she tripped on an incline at the door opening* and fell forward to the aft of the door."

(Ex. 1, ¶ 6A) (Emphasis added).

12. The second incident took place on November 12, 2008 and the recorded

description of the location reads:

> "Fell coming out door of Windjammer on Deck 11 *trip over bump in floor before door*."

(Ex. 1, ¶ 6B) (Emphasis added).

13. The final incident took place on November 13, 2008 and the recorded description of the location reads:

> "Walking from restaurant to pool, tripped on uneven carpet of *inclined walkway, metal part of door caught my sandal*."

(Ex. 1, ¶ 6C) (Emphasis added).

14. Furthermore, Plaintiff has, to date, deposed three crewmembers working aboard the *Monarch of the Seas*. The testimony of all three crewmembers provides additional evidence of the lack of prior incidents and/or complaints involving the subject condition Plaintiff alleges caused his fall.

15. Daniel Budzelewski, the Chief Officer Safety aboard the *Monarch of the Seas* from April, 2008 to May, 2010, testified, in pertinent part:

> Q: Did you investigate any falls in the area where Mr. Zygarlowski fell?
> A: Not as far as I remember. I don't recall any falls in the same area.
>
> Q: You don't recall, but it could have happened?
> A: I don't recall.
>
> Q: Were there any complaints made about the area where Mr. Zygarlowski fell by other passengers or by crew members?
> A: I don't recall any complaints about this area.

(Dep. of Daniel Budzelewksi, p. 35, ll. 16-25, pertinent excerpts of Budzelewski's deposition [pp. 7, 34-35] attached hereto as Exhibit "4").

16. Ole Kvadsheim, the Facilities Manager aboard the *Monarch of the Seas* from

2006 to present, testified, in pertinent part:

> Q: I believe you testified that you were not aware of any falls in the area in the pool deck area leading out from the bathroom lobby down the ramp; is that correct, sir, you're not aware of any other falls?
> A: No, sir.
>
> Q: And I apologize if I asked you this question already, are you aware of any complaints with regard to the ramp leading out of the pool deck, leading to the pool deck from the lobby area.
> A: No. I'm not aware of any complaints like that, no.

(Dep. of Ole Kvadsheim, p. 37, ll. 12-25, pertinent excerpts of Kvadsheim's deposition [pp. 7-8, 14-15, 37] attached hereto as Exhibit "5").

17. Arcelia Archbold, Head Pool Attendant aboard the *Monarch of the Seas* from August, 2009 to April 22, 2010, testified, in pertinent part:

> Q: Are you aware of anyone complaining about that ramp coming from the bathroom lobby back out to the pool deck area?
> A: No.
>
> Q: So neither passenger nor crew member complaints that you're aware of?
> A: No, sir.
>
> Q: Are you aware of anyone falling in the area of the ramp coming from the bathroom lobby out to the pool deck area?
> A: No, I'm not aware of nothing like that.

(Dep. of Arcelia Archbold, p. 24, l. 24-p. 25, l. 14, pertinent excerpts of Archbold's deposition [pp. 6, 24-25] attached hereto as Exhibit "6").

## III.  MEMORANDUM OF LAW

    A.    SUMMARY JUDGMENT STANDARD

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598 (1970). Once the moving party has met its burden, however, the party opposing the summary judgment may not simply rely on the pleadings or mere denials of the allegations. Rather, the opposing party must adduce some evidence showing that material facts are in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Rule 56(c) therefore requires a non-moving party to go beyond the pleadings and by [its] own affidavits or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also, Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The United States Supreme Court has recognized that the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. 322-323. As the Supreme Court concluded in *Celotex*, *supra*, "one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims...and we think it should be interpreted in a way that allows it to accomplish this purpose." *Id*. at 324.

    B.    THE PRESENT MATTER IS CONTROLLED BY GENERAL MARITIME LAW

The present matter is controlled by general maritime law, as the alleged tort occurred upon navigable waters, and bears a significant relationship to traditional maritime activity. *See*

*Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S. Ct. 493 (1972); *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 102 S. Ct. 2654 (1982), *reh'g denied,* 459 U.S. 899, 103 S. Ct. 198 (1982); *Sisson v. Ruby,* 497 U.S. 358, 110 S. Ct. 2892 (1990).  Furthermore, while the alleged wrong must have a significant relationship to maritime activity, there exists no requirement that the maritime activity be exclusively navigational.  *Foremost Ins.,* 102 S. Ct. at 2658.  In addition, the law governing suits involving passengers against cruise lines is the general maritime law of the United States.  *See generally* THOMAS J. SCHOENBAUM, 1 ADMIRALTY AND MARITIME LAW §3-5 (2d ed. 1994); *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318 (11th Cir. 1989), *on remand,* 715 F. Supp. 1069 (M.D.Fla. 1989); *Beard v. Norwegian Caribbean Lines,* 900 F.2d 71 (6th Cir. 1990); *see also Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S. Ct. 406 (1959); *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 74 S. Ct. 202 (1953).

C.  **PLAINTIFF'S CLAIM FOR NEGLIGENCE FAILS, INASMUCH AS PLAINTIFF CANNOT ESTABLISH THAT DEFENDANT FAILED TO EXERCISE REASONABLE CARE**

It is well settled that the standard of care due passengers by a cruise ship operator is that standard of care which is reasonable under the circumstances.  *Kermarec,* 358 U.S. 625, 630-32; *Everett v. Carnival Cruise Lines, Inc.,* 912 F.2d 1355, 1358 (11th Cir. 1990); *Keefe,* 867 F.2d at 1322; *see also Mercer v. Carnival Corporation,* 2009 U.S. Dist. LEXIS 9093 (S.D. Fla. 2009); *Isbell v. Carnival Corporation,* 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006).  Specifically, the Supreme Court has defined the duty of care owed passengers by a cruise ship operator as follows: "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Kermarec,* 358 U.S. at 632.

Reasonable care, as a standard for the imposition of liability, requires as a prerequisite to the imposition of liability, that the cruise ship operator have actual or constructive notice of a dangerous or risk-creating condition. *Everett,* 912 F.2d at 1358; *Keefe,* 867 F.2d at 1322; *Isbell,* 462 F. Supp. 2d at 1237; *see also Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 73-74 (6th Cir. 1990); *Muratore v. M/S Scotia Prince,* 845 F.2d 347, 353 (1st Cir. 1988); *Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63, 65-66 (2d Cir. 1988); *Rainey v. Paquet Cruises, Inc.,* 709 F.2d 169, 172 (2d Cir. 1983); *Gibboney v. Wright,* 517 F.2d 1054, 1059 (5th Cir. 1975); *Urian v. Milstead,* 473 F.2d 948, 951 (8th Cir. 1973). As enunciated by the Eleventh Circuit in *Keefe*:

> [W]e hold that the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, ***a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where, as here, the menace is one commonly encountered on land*** and not clearly linked to nautical adventure.

*Keefe,* 867 F.2d at 1322 (emphasis added). Most importantly, it is well-settled that a cruise ship operator must be on notice of a dangerous or risk-creating condition "for a sufficient interval of time to invite corrective measures" before liability will attach. *Monteleone,* 838 F.2d at 65-66; *Rainey,* 709 F.2d at 170; *Dann v. Compagnie Generale Transatlantique,* 45 F. Supp. 225, 226 (E.D.N.Y. 1942).

Equally well-settled is the fact that the burden rests with the plaintiff to prove notice, either actual or constructive, as well as the existence of same for a sufficient interval of time to allow for corrective action. *See generally Keefe,* 867 F.2d at 1322; *Monteleone,* 838 F.2d at 65-66*; Rainey,* 709 F.2d at 172; *Reneau v. Shoreline Marine Sightseeing Co.*, 1986 U.S. Dist. LEXIS 30275 (N.D. Ill. 1986). As held by the U.S. District Court for the Northern District of

Illinois:

> [I]t is the plaintiff's burden to demonstrate that his injury was caused by the defendant's negligence. In order to meet this burden, the plaintiff must establish directly or by just inference some want of care on the part of the master or the crew of the ship to which his injury may fairly and reasonably be traced. It is not enough for the plaintiff to prove that the negligence might perhaps have caused the injury. If the injury might well have resulted from one of many causes, it is incumbent upon the plaintiff to produce evidence which will exclude the operation of those causes for which the master or crew is under no legal obligation. If the cause of the injury may be as reasonably attributed to an act for which the master and crew are not liable as to one for which they are, the plaintiff has not sustained the burden of fastening tortious conduct upon the master or crew. The evidence showing negligence must come from witnesses who speak as knowers, not as guessers.

*Reneau,* 1986 U.S. Dist. LEXIS 30275 at *5-6 (citations omitted).

1.   **Application of the "Notice Requirement" in Cruise Lines Cases**

The requirement that a defendant cruise line operator have notice of an allegedly dangerous condition in order to impose liability is well-established and applies to instances involving both transitory and non-transitory conditions. When a plaintiff passenger is unable to adduce evidence the cruise line was on notice of the dangerous nature of the condition at issue, summary judgment is appropriately entered in favor of the cruise line.

*Davis v. Spirit of New Jersey,* 1999 WL 33263861 (D. N.J. 1999) is a case factually analogous to the present matter. *Davis* involved a personal injury action by a passenger as a result of a fall while descending a staircase from an observation deck to the deck below. In addition to alleging that the defendant cruise line was "strictly liable for the construction and design that created the dangerous condition" the *Davis* plaintiff alleged defects with the subject staircase as follows:

1) non-uniform dimensions in terms of riser height and tread

> width; 2) non-uniform slip resistance characteristics, specifically as to the nosing area of the treads; 3) high risers and short treads relative to land based structures; 4) an improper slope or inclination of the stairway; and 5) inadequate warning sign and lighting. Plaintiff contends these defects were either known or should have been known to the defendants.

Based upon the plaintiff's failure to "demonstrate that defendants had actual or constructive notice of any allegedly defective condition," the U.S. District Court for New Jersey held that "plaintiff's claims are not tenable" and granted summary judgment in favor of the defendant cruise line and held, *inter alia*:

> In short, defendants can only be on constructive notice of this defect if a "reasonable inspection" of the vessel can be held to require a purchaser to proceed to use a ruler, and to measure the tread depth and riser dimensions and uniformity of every staircase on a ship, at the time it purchased the vessel, despite the fact that the construction has been approved and supervised by the Coast Guard, and despite the fact that there is no demonstration that any accident relating to the "condition" has ever occurred. This Court concludes that no established view of the "reasonable inspection" requirement could require such an inspection. Thus, defendants were not placed on constructive notice of this condition.

*Id.* at *9.

Similarly, in *Meyer v. Carnival Cruise Lines, Inc.,* 1994 U.S. Dist. LEXIS 21431 (N.D. Cal. 1994), the plaintiff argued that the defendant cruise line was negligent in failing to provide a reasonably safe stairway and "had actual notice of the alleged dangerous condition by virtue of the unbroken airwell's mere existence and Carnival's ongoing maintenance of the area." *Id.* at *5. Although the U.S. District Court for the Northern District of California denied the defendant cruise line's Motion for Summary Judgment on the plaintiff's "alcohol-related claims," it granted summary judgment on the "stairway claim" and held:

> The court finds this argument [existence of airwell and ongoing maintenance] to be meritless. As an initial matter, Meyer has

> produced no evidence that the stairway is unsafe when used as intended. ***Moreover, although Carnival's ongoing maintenance of the area may provide it with actual notice that the uninterrupted airwell existed, Meyer has offered no evidence that Carnival had notice of the*** **danger** ***that airwell allegedly creates for cruise passengers. For example, there is no evidence that Carnival had received any complaints about the airwell before Meyer's accident or that any prior similar accidents had occurred aboard the JUBILEE.*** That notice is an essential element of a negligence action against a shipowner for an allegedly defective condition is not in dispute. Because Meyer bears the burden of proving at trial that the JUBILEE's stairway was unsafe when used as intended and that Carnival had notice of the alleged dangerousness of the uninterrupted airwell created by the stairway, her failure to present evidence on these essential elements mandates that Carnival be granted summary judgment on this portion of Meyer's negligence claim.

*Id.* at *5 (emphasis added).

*Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63 (2d Cir. 1988), a case also factually similar to the present matter, involved a personal injury action by a passenger as a result of a fall down a flight of stairs allegedly as a result of a protruding screw at the edge of one of the steps. The District Court entered judgment for the passenger plaintiff, holding that the defendant cruise line had negligently caused the plaintiff's injury. The Second Circuit Court of Appeals reversed, as the record did not support a finding that the cruise line had actual or constructive notice of the protruding screw which allegedly caused the plaintiff's fall. As the Second Circuit held, "BCL's [the cruise line] liability properly turns on whether it had notice of the screw's protrusion. Since no one contends that BCL had actual notice, the issue becomes whether it had constructive notice." *Id.* at 65. The court went on to accept the district court's findings that the screw in question was, in fact, protruding and that the plaintiff tripped on it. However, as "no witness testified to seeing the protruding screw prior to the accident," the Second Circuit concluded:

> [W]e simply cannot conclude that BCL's failure to discover the

> condition of the protruding screw, assuming as we do that it existed prior to the fall and in fact caused the fall, constituted a lack of due care for which it should be held liable.

*Id.* at 66.

Next, *Benezra v. Holland America Line-Westours, Inc.,* 215 F.3d 1332 (9th Cir. 2000) involved a personal injury action by passenger as a result of a fall on the steps inside a pool aboard the ship. Based upon the plaintiff's failure to meet her burden of establishing that the defendant cruise line was aware of a dangerous or risk-creating condition posed by the pool steps, the Ninth Circuit affirmed the District Court's entry of summary judgment in the cruise line's favor and held:

> There is no evidence that Holland America received any complaints about the configuration or construction of the pool steps, that any prior similar accidents had occurred, or of any other circumstance that could have placed Holland America on notice of any dangerous condition.

*Id.* at 1332.

Finally, *Mercer,* 2009 U.S. Dist. LEXIS 9093, involved a personal injury action by a passenger as a result of a slip and fall in his cabin after stepping out of the shower. The plaintiff alleged that the cruise line breached its duty of care by failing to warn him of the slipperiness of the cabin floor. As a result of the plaintiff's failure to come forward with any evidence that the cruise line had notice of the allegedly dangerous condition, the District Court for the Southern District of Florida entered summary judgment in the cruise line's favor and held:

> Plaintiff, however, fails to provide any evidence to support his contention that Defendant had notice of the allegedly dangerous condition. Instead, Plaintiff merely states that, due to the close proximity of the hardwood floor to the bathroom, Defendant must have known that moisture might accumulate on the hardwood floors or that passengers might walk around with wet feet, and that it would create a dangerous condition. Plaintiff provides no facts to

> show that Defendant had notice and cites no case to show that he could assume Defendant had notice. Thus, Plaintiff has failed to show that Defendant had any notice of an allegedly dangerous condition. *See Keefe,* 867 F.2d 1318 (holding that actual or constructive notice of the risk creating situation was necessary for the shipowner to be liable where passenger slipped on slippery dance floor).
>
> In addition, Plaintiff fails to show that Defendant breached its duty of care by failing to warn him of the slipperiness of the floor. Again, the applicable standard of reasonable care requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the dangerous condition. *Keefe,* 867 F.2d at 1322. Plaintiff, however, provides no factual support for his allegation that Defendant had any notice of the allegedly dangerous condition. Furthermore, while there is a duty to warn the passengers of dangers, this obligation extends only to those dangers that are not apparent and obvious to the passenger. *Luby v. Carnival Cruise Lines, Inc.,* 633 F. Supp. 40, n.1 (S.D. Fla.1986). Plaintiff stated that he is aware of the need to dry his feet before stepping out of the shower and on to the floor and he does so before he steps out of the shower and on to the tile floor of his home.

*Mercer,* 2009 WL at *2-*3.

2.  **Application of the "Notice Requirement" in this Case**

On these facts, Plaintiff can demonstrate only that he fell while walking down a wheelchair access ramp. Even taking the allegations of fault at face value, which Defendant denies, they do not rise to the level of establishing Defendant was on either actual or constructive notice that the ramp presented an unreasonably dangerous "uneven floor surface" which purportedly caused Plaintiff to fall. Analogous to the facts in the foregoing maritime cases, Plaintiff here can only argue that Defendant was on actual notice of the existence of the incline/decline of the wheelchair access ramp.

However, lacking is any evidence adduced by Plaintiff that Defendant was on notice that the ramp was an unreasonably dangerous means of egress for passengers traveling from the

starboard side restrooms/Windjammer Café to the main pool deck area. Plaintiff's inability to produce such evidence is affirmatively demonstrated by the fact the Plaintiff was the only reported incident involving a trip and fall at this specific location aboard the *Monarch of the Seas*, for the period of three years preceding April 16, 2010. (Ex. 1).

As explained in Mr. Banciella's affidavit, Plaintiff's claimed incident is the first to occur on the carpeted wheelchair access ramp located adjacent to the starboard side aft sliding glass door threshold. (Ex. 1, ¶ 12). There are no other reported incidents involving a passenger either ascending or descending this particular ramp. Furthermore, the testimony of the three crewmembers serving aboard the *Monarch of the Seas* prior to, and at the time of, Plaintiff's claimed incident all affirmatively testify that they were never made aware of any other incidents or complaints concerning the subject ramp. (Ex. 4-6). Plaintiff has not, and cannot, produce any evidence that Defendant had actual or constructive notice that the subject wheelchair access ramp presented an unreasonably dangerous condition.

## IV. CONCLUSION

It is axiomatic that a cruise ship operator must be on notice of a dangerous condition before liability will attach and that such notice must exist for a sufficient interval of time to allow for corrective action. It is also axiomatic that the burden rests solely with a passenger plaintiff to prove the existence of notice, as well as the existence of same for a sufficient interval of time to allow for corrective action. Plaintiff is unable to meet his burden of proof in the present matter.

Even assuming Plaintiff fell as he alleges, the mere fact that Plaintiff fell is insufficient as a matter of law to place liability upon Defendant. Plaintiff must prove that Defendant was on notice, either actual or constructive, of the asserted dangerous or risk-creating condition. Notice

is the legal prerequisite to the imposition of liability. Plaintiff cannot produce any evidence that Defendant was on notice, either actual or constructive, of the alleged dangerous or risk-creating condition posed by the subject wheelchair access ramp on Deck 11 aboard the *Monarch of the Seas*.

WHEREFORE, Defendant, ROYAL CARIBBEAN CRUISES LTD., respectfully moves the Court for entry of Summary Judgment in its favor and against Plaintiff, ROBERT ZYGARLOWSKI, as there exist no genuine issues of material fact in dispute, and Defendant is entitled to judgment in its favor as a matter of law.

Dated: May 25, 2012
       Miami, Florida

Respectfully submitted,

  /s/ Nicholas A. Applin
DAVID J HORR
Florida Bar No.: 310761
dhorr@admiral-law.com
BRIAN T. SCARRY
Florida Bar No.: 914230
bscarry@admiral-law.com
NICHOLAS A. APPLIN
Florida Bar No.: 92243
napplin@admiral-law.com
HORR, NOVAK & SKIPP, P.A.
One Datran Center, Suite 1104
9100 S. Dadeland Boulevard
Miami, FL 33156
Telephone: (305) 670-2525
Facsimile: (305) 670-2526
Attorneys for Defendant

## CERTIFICATE OF SERVICE

We hereby certify that on May 25, 2012, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

   /s/  Nicholas A. Applin
NICHOLAS A. APPLIN
Florida Bar No.: 92243
napplin@admiral-law.com

## SERVICE LIST

| | |
|---|---|
| **Andrew McLaughlin**<br>ANIDJAR & LEVINE, P.A.<br>12 S.E. 7th Street, Suite 604<br>Ft. Lauderdale, Florida  33301<br>Tel.:  954-525-0050<br>Fax:  954-525-0020<br>*Attorneys for Plaintiff*<br>AMcLaughlin@anl-law.com | **David J. Horr**<br>**Brian T. Scarry**<br>**Nicholas A. Applin**<br>HORR NOVAK & SKIPP, P.A.<br>9100 S. Dadeland Blvd., Suite 104<br>Miami, FL 33156<br>Tel.:  305-670-2525<br>Fax:  305-670-2526<br>*Attorneys for Defendant*<br>dhorr@admiral-law.com<br>bscarry@admiral-law.com<br>napplin@admiral-law.com |

/446